**Marvin KEITH, Plaintiff,**

v.

**BLACK DIAMOND ADVISORS, INC., Pace Holdings, LLC, Steven Deckoff, and James Walker III, Defendants.**

No. 98 CIV. 3937(SAS).

United States District Court, S.D. New York.

March 8, 1999.

Deborah Deitsch–Perez, Bickel & Brewer, New York City, for Plaintiff.

Joseph Aronauer, Morgenthau, Greenes, Goldfarb & Aronauer, New York City, for Defendants.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Marvin Keith ("Keith" or "Plaintiff") brings this multi-count action against defendants Black Diamond Advisors, Inc. ("Black Diamond"), Pace Holdings, LLC ("Pace"), Steven Deckoff, and James Walker III (collectively, "defendants"), claiming breach of contract, fraud, tortious interference with economic prospects, conspiracy, breach of fiduciary duty, intentional infliction of emotional distress, and violations of federal securities laws under Sections 10(b) and 29(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78cc(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. Keith asserts that this Court has subject matter jurisdiction based on (a) complete diversity of citizenship between the parties and an amount in controversy greater than $75,000, pursuant to 28 U.S.C. § 1332; (b) a federal question arising under §§ 10(b) and 29(b) of the Securities Exchange Act of 1934, pursuant to 28 U.S.C. § 1331; and (c) supplemental jurisdiction for the remaining pendent state law claims, pursuant to 28 U.S.C. § 1367(a).

Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction, on the grounds that (1) the citizenship of the parties is not completely diverse; (2) the federal securities laws and regulations do not apply to this dispute; and (3) in the absence of jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, the pendent state law claims should be dismissed for lack of supplemental jurisdiction pursuant to 28 § 1367(a).

## I. Facts

Plaintiff, together with a small group of investors, formed Eagle Capital Mortgage, Ltd. ("Eagle, Ltd.") as a vehicle for doing business as a sub-prime mortgage lender, and Eagle Capital Corp. ("Eagle Corp.") as the general partner to run the business (collectively, "Eagle"). Complaint ("Cplt.") ¶ 12. As Eagle's promoter, Keith built the company from its infancy to ultimate profitability through his efforts in developing a marketing plan, managing the corporate affairs of the Board of Directors, and obtaining financing. *Id.* at ¶ 14. Keith alleges that Black Diamond, a venture capital firm, approached him in 1997, offering its expertise and connections to assist Eagle in achieving even greater success. *Id.* at ¶ 15. Black Diamond made numerous statements, both written and oral, in offering its services. In reliance upon these representations, Keith agreed to join in the formation of Pace with Black Diamond and Philip Milton ("Milton"), one of the original investors in Eagle. Keith (whose Eagle interests were held by Hanover Trust, a Texas trust company) and Milton transferred their interests in Eagle to Pace as their initial contributions to the venture; each received a 25% interest in Pace. *Id.* at ¶ 18. To earn its 50% under the Pace Holding Operating Agreement ("Agreement"), Black Diamond contributed $150,000 in cash and made certain promises about obtaining additional financing and helping to make Eagle profitable. *Id.* at ¶ 19.

Keith alleges that once the Agreement was signed, Black Diamond used its majority interest in Pace and cash-rich position to "squeeze [him] out of Eagle." *Id.* at ¶ 32. Keith asserts, *inter alia*, that Defendants (1) manipulated him into releasing them for "all of their prior misconduct," *id.* at ¶ 36; (2) planned to trigger a capital call which would dilute Keith's interests, *id.* at ¶ 38; and (3) wrongfully appointed three Black Diamond representatives as new Eagle directors, which stripped Keith of control of the Board of Pace. *Id.* at ¶ 41. The newly enlarged board eliminated Keith's salary and health insurance coverage. *Id.* at ¶ 44.

Keith further alleges that Pace manipulated him into assigning to Pace his option to purchase co-venturer Dyson's interests in Eagle, when Keith's purchase of those interests would have given him more leverage in his negotiations with Pace. *See* Cplt. at ¶ 23. Additionally, Keith claims that Defendants pressured him into settling litigation against Weyand, another former co-venturer in Eagle, instituted for breach of fiduciary duty in connection with Eagle, rather then pursuing a likely cash judgment. *See* Cplt. at ¶ 26. Keith alleges that Pace "plainly was trying to entice [him] into contributing the ... Eagle interests he received from the Weyand settlement to Pace." Cplt. at ¶ 46. Finally, according to Keith, Pace's unwillingness to negotiate anti-dilution and pro-distribution amendments to the Agreement in Keith's favor, despite numerous promises to the contrary, evidences Defendants' bad faith and generally oppressive conduct. *See* Cplt. at ¶¶ 48–49.

## II. Standards of Review

### A. Standard of Review under 12(b)(1)

In considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction. *See Atlantic Mut. Ins. Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). "On a motion under Rule 12(b)(1) challenging the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits." *Antares Aircraft v. Federal Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). Thus the standard used to evaluate a Rule 12(b)(1) claim is akin to that for summary judgment under Fed.

R.Civ.P. 56(e) ("Rule 56(e)"). *See Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

### B. Standard of Review under 12(b)(6)

Dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6) is proper "only where it appears beyond doubt that the Plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Scotto v. Almenas*, 143 F.3d 105, 109–10 (2d Cir.1998) (quoting *Branham v. Meachum*, 77 F.3d 626, 628 (2d Cir.1996)) (internal quotation omitted). "The task of the court in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir.1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). Thus, in deciding such a motion, the court must accept as true all material facts alleged in the nonmovant's favor. *See Thomas v. City of New York*, 143 F.3d 31, 36 (2d Cir.1998).

### III. DISCUSSION

### A. Complete Diversity of Citizenship Between the Parties

■ In order to properly invoke diversity jurisdiction, Keith must allege facts demonstrating that the citizenship of the parties is completely diverse. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *Advani Enterprises, Inc. v. Underwriters at Lloyds*, 140 F.3d 157 (2d Cir.1998). Although the statute establishing diversity jurisdiction provides that a corporation shall be deemed to be a citizen of the states in which it is incorporated and in which it has its principal place of business, 28 U.S.C. § 1332(c), it is silent with regard to unincorporated entities. The courts have long held, however, that partnerships, joint ventures, joint stock companies, voluntary associations, labor unions and other such entities are not citizens at all and therefore a court must look to the citizenship of each partner or member of the entity. *See, e.g., Carden v. Arkoma Associates*, 494 U.S. 185, 189, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). In *Carden*, the Supreme Court "adhered to its oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members.'" *Id.* at 196–97, 110 S.Ct. 1015 (quoting *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 32 L.Ed. 800 (1889)).

■ The question here is whether Pace, a limited liability company ("LLC") (in contrast with the limited liability *partnership* in *Carden*), should be treated as a corporation or as an unincorporated entity. Keith argues that an LLC should be treated as a corporation because it is possessed of a "juridical personality" similar to that of a corporation. He relies on the *Carden* Court's approval of corporate treatment of the *sociedad en comandita*, an unincorporated entity created under Puerto Rican civil law that was at issue in *Puerto Rico v. Russell & Co.*, 288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933). In *Russell*, the Court reasoned that because the *sociedad*'s juridical personality was treated as complete by the law of Puerto Rico, it merited the same treatment for purposes of federal jurisdiction.

Keith argues, by analogy, that a New York LLC possesses sufficient characteristics of a New York corporation, including, for example, the power to make contracts, own property, conduct business, and sue or be sued in its own name. Therefore, he argues, it should be considered to have a juridical personality comparable to that of a corporation for diversity purposes, notwithstanding that it is never formally incorporated.

I disagree. In *Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), the Supreme Court limited *Russell*'s treatment of the *socie-*

*dad en comandita* to the specific facts of the case. Further, in *Carden*, the Court noted that in *Bouligny* it had rejected the test proposed by Plaintiff—analyzing an entity's characteristics to determine its status. Keith's detailed analysis of the New York LLC statute, his assertion that the statute creates an entity resembling the Puerto Rican *sociedad en comandita*, and his conclusion that the LLC should therefore be treated as a corporation for diversity purposes, do not square with *Carden*'s adherence to the traditional rule concerning non-corporate artificial entities.

The only court to have applied *Carden* to a limited liability company concluded that, like a partnership, the citizenship of a limited liability company is the citizenship of all its members. *International Flavors and Textures, LLC v. Gardner*, 966 F.Supp. 552, 555 (W.D.Mich.1997). In a pre-*Carden* case, one court in this district treated a foreign limited liability company as a corporation for diversity purposes. *See General Atl. Invs. Ltd. v. Business Dev. Capital*, 620 F.Supp. 964 (S.D.N.Y.1985)(determining citizenship of a limited liability company based on its principal place of business). However, because of the Supreme Court decision in *Carden*, *General Atlantic* is not applicable to the case at bar. *See Carden*, 494 U.S. at 196–97, 110 S.Ct. 1015 ("[H]aving established special treatment for corporations, we will leave the rest to Congress"); *see also Inarco International Bank N.V. v. Lazard Freres & Co.*, No. 97 Civ. 0378, 1998 WL 427618, at *2 (S.D.N.Y. July 29, 1998) (an LLC has the citizenship of each of its members, rather than that of its place of registration).

■ Because Pace is a New York LLC and not a New York corporation, jurisdiction is determined by the citizenship of each of Pace's individual members. Plaintiff Keith is a member of Pace. As a result, complete diversity is lacking.

## B. Federal Question Jurisdiction

Keith also asserts that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because his claims arise under the Exchange Act and Rule 10b–5. In order to have standing to sue under sections 10(b) and 29(b) of the Exchange Act, Keith must allege fraud or deceit "in connection with the purchase or sale of any security." *See* 17 C.F.R. § 240.10b–5; *see also* 15 U.S.C. §§ 78j(b) and 78cc(b). While the definition of a "security" in the Exchange Act is quite broad,[1] Congress did not intend to provide a federal remedy for all fraud. *See Marine Bank v. Weaver*, 455 U.S. 551, 557, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982). Keith's standing to sue turns upon a determination of whether, under the circumstances, Keith's membership interests in Pace (counts 14 and 15), and the Eagle interests he acquired from Weyand (count 16), constitute "securities" under the meaning of Section 78c(a)(10), and whether he is a "buyer or seller" as required by the governing statute.

■ However, when an issue concerning an element of the cause of action is also an

---

1. "The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing Agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; ..." 15 U.S.C. § 78c(a)(10). For the purposes of this case, the central question is whether Keith's transactions involving the Pace LLC membership interests and/or the Weyand Eagle interests are "investment contracts" within the meaning of this statutory definition of "security."

element of jurisdiction, the Supreme Court has explicitly held that there is a strict standard for dismissals for lack of subject matter jurisdiction. In *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Court held that jurisdiction must be exercised except if "the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial or frivolous." *Id.* at 682, 66 S.Ct. 773. Here, the issues as to whether the Pace LLC interests and the Weyand Eagle interests are securities, and whether Keith has standing to sue as a trust beneficiary (and not the legal "buyer or seller" of those interests) are determinative of both the jurisdictional issue and the adequacy of the claim. Under *Bell*, jurisdiction is presumptive unless the federal claim is so insubstantial or frivolous that it was added only to obtain jurisdiction over the concededly state law claims. *See Odom v. Slavik*, 703 F.2d 212, 216 (6th Cir.1983).

■ In *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182 (2d Cir.1996), the Second Circuit stated that "[b]ecause of the more-than-occasional difficulties involved in parsing a claim alleging federal question jurisdiction to determine whether it fails to ... meet jurisdictional requirements, the federal courts have followed a general practice of granting jurisdiction in most cases and dismissing for lack of subject matter jurisdiction only under narrow circumstances." *Id.* at 1188. The *Nowak* court continued, "in the words of Professor Moore,

> 'if a federal statute upon which a claim is premised is interpreted to be inapplicable, it could be argued that the Plaintiff has failed to present a federal question and thus subject matter jurisdiction is absent. However, courts have uniformly held that in such instances the preferable practice is to assume jurisdiction exists and proceed to determine the merits of the claim pursuant to [Rule 12(b)(6) or] Rule 56.' "

*Id.* at 1188 (quoting 2A James W. Moore, *et al.*, *Moore's Federal Practice* ¶ 12.07 [2. –1] at 12–60 (2d ed.1995)). In other words, "in cases where the asserted basis for subject matter jurisdiction is also an element of the Plaintiff's allegedly federal cause of action, we ask only whether—on its face—the complaint is drawn so as to seek recovery under federal law or the Constitution.... If so, then we assume or find a sufficient basis for jurisdiction, and reserve further scrutiny for an inquiry on the merits." *Id.* at 1189.

The *Nowak* court further noted that this approach preserves the exception set forth in *Bell v. Hood*, permitting the court to dismiss for lack of subject matter jurisdiction—even if a federal claim is asserted on the face of the complaint—where the federal question is "so plainly insubstantial as to be devoid of any merits and thus [does] not present [ ] any issue worthy of adjudication." *Giulini v. Blessing*, 654 F.2d 189, 192 (2d Cir.1981); *see also AVC Nederland BV v. Atrium Inv. Partnership*, 740 F.2d 148, 152–53 (2d Cir.1984) ("[w]hen the contested basis of federal jurisdiction is also an element of Plaintiff's asserted federal claim, the claim should not be dismissed for want of jurisdiction except when it appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such claim is wholly insubstantial and frivolous" (internal quotation marks omitted)).

There can be no doubt that Keith's Complaint attempts to assert claims under the Exchange Act. Paragraph 2 of the Complaint states: "This court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, because claims against Defendants arise under Sections 10(b) and 29(b) of the Securities Exchange Act of 1934 ..., 15 U.S.C. §§ 78j(b) and 78cc(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5." Cplt. ¶ 2. Keith's cause of action specifically seeks injunctive relief and recovery of damages based on his allegations that Defendants, *inter alia*, (a) employed devices, schemes and artifices

to defraud; (b) made untrue statements of material facts and/or omitted to state material facts; and (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon him in connection with the Agreement. *See* Cplt. ¶¶ 132, 138, 143. In order to satisfy the jurisdictional requirement of the Exchange Act, however, the wrongful activity alleged in the Complaint must be "in connection with the purchase or the sale of any security." 17 C.F.R. § 240.10b–5.

Indeed, the main issue arising from the pleadings is whether the Pace interests and the Weyand Eagle interests are "securities" under federal securities law. If they are "securities," a second question arises as to whether Plaintiff Keith, a beneficiary of the Hanover Trust, the legal "buyer" of the Pace and Weyand Eagle interests, has standing to sue under Rule 10b–5. To the extent Keith's Complaint raises these questions, it is neither "plainly insubstantial" nor does it fail to present any issue worthy of adjudication. *See Giulini*, 654 F.2d at 192.

Dismissal under Rule 12(b)(1) is inappropriate. However, the next question is whether the Complaint states a claim under the Rule 12(b)(6) standard.

## 1. The "Securities" Requirement

### (a) Counts 14 and 15: Keith's membership interests in Pace

■ Keith's interests in Pace are membership interests in a New York LLC. *See* Agreement at Exhibit A. LLC membership interests are not "securities" unless they meet the four criteria of an "investment contract" set forth in *Securities and Exchange Commission v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). The *Howey* test defines "an investment contract [as] a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...." *Id.* at 298–99, 66 S.Ct. 1100. *Howey* requires

(1) that a purchaser give up some tangible and definable consideration in return for the interest obtained; (2) the existence of either common interests between the investor and managers of the enterprise or a pooling of interests by members; (3) an expectation of profit by the investor; and (4) that the expectation of profit be derived from the entrepreneurial efforts of others. The Supreme Court has further asserted that in defining the term "security," "form should be disregarded for substance and the emphasis should be on economic reality." *See Howey*, 328 U.S. at 298–99, 66 S.Ct. 1100; *see also Reves v. Ernst & Young*, 494 U.S. 56, 61, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 848, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

On the face of his Complaint, Keith meets the first three prongs of the *Howey* test: (1) the transfer of his Eagle interests constitutes tangible and definable consideration for the purchase of his Pace membership interests; (2) a commonality of interest with Milton and Black Diamond exists, because each has pooled his interests—Milton and Keith through their Eagle shares, Black Diamond in the form of cash and promises of "sweat equity"—to create Pace; and (3) it is presumed that Keith entered into the deal with the intention of making a profit.

■ The critical inquiry here involves the fourth prong of *Howey*—whether Keith invested in Pace with the intention of deriving profit from the managerial or entrepreneurial efforts of others. It is clear from Keith's allegations that he intended to maintain some degree of control in Pace. In particular, Keith acquired an interest in Pace pursuant to Black Diamond's representations that he would oversee the marketing operations of the new company and that his interests in Pace would never be unfairly diluted. Cplt. at ¶¶ 16–18. Furthermore the Agreement created a "member-managed"

LLC, which, under New York law, is controlled by its members.[2] *See* New York Limited Liability Company Law ("NY LLC Law") § 401 (McKinney 1998).[3]

Under the Agreement and N.Y. LLC Law, Pace members (including Keith) are endowed with a broad range of rights and powers. *Compare* Agreement *and* N.Y. LLC Law. In particular, the N.Y. LLC Law grants Keith (a) the right to manage Pace, along with the other members, *see* N.Y. LLC Law § 401; Agreement § 5.1.1; (b) the right to vote in proportion to his holdings, *see* N.Y. LLC Law § 402; (c) protection from other members acting individually on behalf of Pace, *see* Agreement § 5.1.2; (d) protection from calls for additional capital without approval of two-thirds of the membership interests, *see* Agreement § 3.2.1; (e) the right to participate in a detailed cash flow distribution structure, *see* Agreement § 4.1.1; and (f) the right to call meetings of Pace members.[4] This level of control is antithetical to the notion of member passivity required under the fourth prong of *Howey.*

Keith argues, however, that under an "economic realities" inquiry, this type of functional analysis merely emphasizes "form" where the focus should be on the "economic reality." *See Howey,* 328 U.S. at 298–99, 66 S.Ct. 1100. In Keith's view, the Agreement and the statute should not trump the economic reality of Keith's involvement with Pace. Keith claims that the Agreement "was set up to appear as if Black Diamond did not fully obtain its interest until approximately $30 million was paid out to Milton and Keith in preference distributions ... [while], in fact, [giving] Black Diamond 50% of Pace." Cplt. at ¶ 19. Further, Keith alleges that Pace stripped him of oversight of marketing, Cplt. at ¶ 22; manipulated him into assigning his option to purchase the Dysons' Eagle interests to Pace, Cplt. at ¶ 23; took steps to dilute his interests through a capital call in which it knew he would be financially unable to participate, Cplt. at ¶¶ 38–43; installed its newly controlling slate of directors, Cplt. at ¶ 44; and cut off his salary. *Id.* On the basis of these allegations, Keith argues that his investment in Pace resulted in so little control, notwithstanding the statute and the Agreement, that he deserves to be protected by the securities laws.

In *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981), the court recognized that although general partnership interests, in contrast to limited partnership interests, are ordinarily not securities because of the level of managerial control exercised by a general partner, in some limited circumstances a general partnership interest may be a "security." By analogy, an LLC membership interests may be considered a security if the Plaintiff can "demonstrate that, in spite of the partnership form which

---

**2.** *See* Affidavit of Joseph Aronauer, counsel for Defendants ("Aronauer Aff."), dated October 12, 1998, at Exhibit E at ¶ 5. This Court may consider both the Agreement and the Affidavit. *See Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 662 (2d Cir.1996) ("In considering a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference"); *see also International Audiotext Network, Inc. v. AT & T,* 62 F.3d 69, 71–72 (2d Cir.1995) (on motion to dismiss, the court can consider document integral to complaint even if the document is not annexed to the Complaint).

**3.** In contrast, a "manager-managed" LLC is operated by "managing members" vested with the sole power to bind the company and take all other acts necessary to carry on its business and affairs. *See* New York Limited Liability Company Law § 401. Under a manager-managed LLC, non-managing members are merely passive investors whose interests are not unlike those of limited partners in a limited liability partnership. *See* 1 *Federal Securities Act of 1933* § 2.01[11](iii)(A.A. Sommer, Jr., Release No. 71, 1998).

**4.** "A meeting of the Members may be called at any time by those Members holding at least 20 percent (20%) of the Percentages then held by the Members...." Agreement § 5.2.1. *See* Agreement, Exhibit A, for percentage holdings of each Pace member.

the investment took, [the investor was] so dependent on the promoter or on a third party that [he was] in fact unable to exercise meaningful partnership powers." *Id.* at 424; *see also Holden v. Hagopian,* 978 F.2d 1115, 1119 (9th Cir.1992) ("in determining whether interests are investment contracts, we focus on the economic realities of the underlying transaction and not on the name it carries"). However, following the Supreme Court's "repeated directions to consider investment schemes in light of their economic realities," this Circuit has found that a scheme that was primarily "a means whereby participants could pool their own activities, their money and the promoter's contribution in a meaningful way" was not an investment contract. *SEC v. Aqua–Sonic Products Corp.,* 687 F.2d 577, 582 (2d Cir.1982). Indeed, if an investment scheme gives rise to a "reasonable expectation . . . of significant investor control, a reasonable purchaser could be expected to make his own investigation of the new business he planned to undertake and the protection of the [Exchange Act] would be unnecessary." *Id.* at 585.

Furthermore, "the mere choice by a partner to remain passive is not sufficient to create a security interest." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.,* 840 F.2d 236, 240–41 (4th Cir. 1988). To make this determination, the *Rivanna* court found that the critical inquiry is "whether the powers possessed by the [LLC members] under the [operating agreement] were so significant that, regardless of the degree to which such powers were exercised, the investments could not have been premised on a reasonable expectation of profits to be derived from the management efforts of others." *Id.* at 241 (quoting *Tucker,* 645 F.2d at 419).

In *Hirsch v. duPont,* 396 F.Supp. 1214 (S.D.N.Y.1975), a pre-*Rivanna* case, this court found that the determination whether a partnership interest was a security " 'does not and should not hinge on the particular degree of responsibility [a partner] assumes within the firm,' " nor does the delegation of membership responsibilities, or the failure to exercise membership powers, "diminish the investor's legal right to a voice in partnership [or company] matters." *Id.* at 1220 (quoting *New York Stock Exchange Inc. v. Sloan,* 394 F.Supp. 1303, 1314 (S.D.N.Y.1975)). Therefore, if at the time of his investment in Pace, Keith did not intend to be a passive investor, as he clearly did not, the Pace interests could not be securities. Furthermore, although the degree of control he actually exercised was less than he expected to exercise, that fact does not convert his interests into securities.

### (b) Count 16: Keith's interests in Eagle acquired from the Weyand settlement

◼ Keith also seeks relief under federal securities laws for the transaction involving his acquisition of Weyand's Eagle interests. Defendants argue that because the Eagle interests Keith acquired from Weyand were shares in a company that Keith founded, promoted, and participated in as manager, and from which he once drew a salary, he exercised a degree of control over Eagle inconsistent with an allegation that he was relying on the entrepreneurial efforts of others to create or enhance the interests' value. *See Howey,* 328 U.S. at 298–99, 66 S.Ct. 1100. Defendants further rely on a Supreme Court decision holding that in order to be a security an "unusual instrument" must be offered to multiple potential investors, while a private transaction, negotiated face-to-face between two parties, is not likely to be a security, particularly if the acquirer retained some degree of management control. *Marine Bank v. Weaver,* 455 U.S. 551, 559–60, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982).

Here, Keith's acquisition of the Weyand Eagle interests involved an "unusual instrument"—the bundled Eagle, Ltd. and Eagle Corp. interests—and resulted from a negotiated settlement between Keith and Weyand. The Weyand Eagle interests were not designed to be traded on a public market, nor were they widely traded. While these interests might one day be

sold on an impersonal, public market, and thus might warrant giving those persons who trade in the interest the protection of the securities laws, this is not yet the case. When Keith acquired the Weyand Eagle interests, he retained a measure of control over both Eagle and Pace, and therefore was not a passive investor in them. In short, the Weyand Eagle interests are not securities as a matter of law.

Finally, since neither the Pace interests nor the Eagle interests are securities, it is unnecessary to address the question of whether Keith is a buyer or seller under sections 10(b) and 29(b) of the Exchange Act.[5]

### C. Supplemental Jurisdiction for State Law Claims

For the reasons set forth above, Keith's securities fraud claims are dismissed for lack of subject matter jurisdiction. Because Keith has no other ground for federal jurisdiction, I decline to exercise supplemental jurisdiction over his state law claims. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *In re Merrill Lynch Ltd. Partnerships Litigation*, 154 F.3d 56, 61 (2d Cir.1998). The clerk is directed to close this case.

SO ORDERED:

---

**5.** In order to have standing to sue under these provisions, the Second Circuit has held that Plaintiff must be either a buyer or a seller of a security. *See Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.1952) (adopted by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975)). The restrictive policy of *Blue Chip Stamps* and *Birnbaum* was designed to deter "strike" or nuisance suits filed by mere bystanders to the market on the basis of uncorroborated oral testimony. The Court noted that although the *Birnbaum* rule "undoubtedly excludes plaintiffs who have in fact been damaged by violations of Rule 10b–5," it efficiently disposes of meritless claims exploiting *in terrorem* settlement value well out of proportion to their chances of success at trial. *See Blue Chip Stamps*, 421 U.S. at 740, 95 S.Ct. 1917. If the Pace and Weyand Eagle interests had been securities, Plaintiff—who was a trust beneficiary of the trust-purchaser of the interests—would have had to contend with this strict rule. However, a district court in this Circuit has found that a trust beneficiary has standing to sue despite *Birnbaum* if the policy considerations outlined in *Blue Chip Stamps* are not violated and if the trust beneficiary, though not the nominal buyer or seller, was the one who immediately stood to gain or lose by the transaction. *See Heyman v. Heyman*, 356 F.Supp. 958, 965 (S.D.N.Y.1973).