ROCKY ASPEN MANAGEMENT
204 LLC, Plaintiff,

v.

HANFORD HOLDINGS
LLC, Defendant.

Hanford Holdings LLC, Counter-
and Third–Party Plaintiff,

v.

Rocky Aspen Management 204
LLC, Counter–Defendant,

and

Jeffrey Citron, Stephen Goglia, Mark
Hamwi, Watershed Ventures LLC,
Patrick McGrath, AH DB Kitchen As-
pen Investors LLC, Castlegrace Equi-
ty Investors LLC, and Aristone Hospi-
tality LLC, Third–Party Defendants.

16 Civ. 4270 (VM)

United States District Court,
S.D. New York.

Signed 2/1/2017

Michael E. Norton, Norton & Associates LLC, New York, NY, for Plaintiff.

Scott A. Meyers, Levenfeld Pearlstein, LLC, Chicago, IL, Alyx Siobhan Pattison, Akerman LLP, Chicago, IL, Benjamin Reid Joelson, Michael Darren Traub, Akerman LLP, New York, NY, Jason Stiehl, Pro Hac Vice, Seyfarth Shaw LLP, Chicago, IL, for Defendant.

## DECISION AND ORDER

VICTOR MARRERO, United States District Judge.

Plaintiff Rocky Aspen Management 204 LLC ("RAM 204") commenced this action

against Hanford Holdings, LLC ("Hanford") seeking a declaratory judgment that RAM 204 is the owner of the majority of membership interests in Rocky Aspen LLC ("Rocky Aspen"), a Colorado limited liability company ("LLC") ("Complaint," Dkt. No. 1; "First Amended Complaint," Dkt. No. 15).

Hanford filed an answer to the First Amended Complaint that included counterclaims against RAM 204, as well as claims against third-party defendants Jeffrey Citron, Stephen Goglia ("Goglia"), Mark Hamwi, and Watershed Ventures LLC (collectively and together with RAM 204 the "Watershed Defendants"), and against Patrick McGrath ("McGrath"), AH DB Kitchen Aspen Investors LLC ("AH DB"), Castlegrace Equity Investors LLC, and Aristone Hospitality LLC (collectively, the "Aristone Defendants") ("Answer and Third Party Complaint," Dkt. No. 23).

Since Hanford filed its Answer and Third Party Complaint, the parties have exchanged numerous pre-motion letters, pursuant to the Court's Individual Practices. The Court now construes the Watershed Defendants' November 17, 2016 pre-motion letter as a motion by the Watershed Defendants to dismiss Hanford's Answer and Third Party Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") ("Motion," Dkt. No. 42).

For the reasons set forth below, the Watershed Defendants' Motion is DENIED.

**1.** The factual background below, except as otherwise noted, derives from the Answer and Third–Party Complaint (Dkt. No. 23) and the facts pleaded therein, which the Court accepts as true for the purposes of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 465 (2d Cir. 1995)); see also Chambers v. Time Warner, Inc., 282

## I. BACKGROUND [1]

On June 8, 2016, Plaintiff RAM 204 commenced this action and, on June 29, 2016, filed the First Amended Complaint against Hanford seeking a declaratory judgment that Rocky Aspen, not Hanford, is the owner of the majority of membership interests in Rocky Aspen. (See Dkt. No. 1; Dkt. No. 15.) On July 27, 2016, Hanford filed an Answer and Third Party Complaint alleging counterclaims against RAM 204, as well as claims against third-party defendants, the Watershed Defendants and the Aristone Defendants. (See Dkt. No. 23.)

Hanford's Answer and Third Party Complaint raises four counterclaims arising under federal law: (1) securities fraud in violation of Section 10(b) ("Section 10(b)") of the Securities and Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission Rule 10b–5 ("Rule 10b–5"); (2) control person liability for securities fraud in violation of Section 20(a) of the Exchange Act ("Section 20(a)"); (3) offer and sale of unregistered securities in violation of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act") [2] ("Section 12(a)(1)"); and (4) control person liability for offer and sale of unregistered securities in violation of Section 15 of the Securities Act ("Section 15") (See Dkt. No. 23). The remaining counterclaims are state law claims alleged pursuant to 28 U.S.C. Section 1367. (See id.)

By letter dated September 14, 2016, the Watershed Defendants requested that

F.3d 147, 152 (2d Cir. 2002). Except where specifically quoted, no further citation will be made to the Third Party Complaint or the documents referred to therein.

**2.** Counterclaim Three is alleged as to AH DB, RAM 204, Goglia and McGrath. The remaining federal counterclaims are asserted as to all defendants.

Hanford voluntarily withdraw its counterclaims and third-party claims. (See Dkt. No. 44.) After Hanford declined the request (see Dkt. No. 45), the Watershed Defendants notified the Court of their intention to move to dismiss Hanford's counterclaims and third-party claims and requested a pre-motion conference pursuant to this Court's Individual Practices. (See Dkt. No. 47.)

The Court held a telephone conference on November 3, 2016, during which the Court directed the parties to submit correspondence addressing the merits of a motion to dismiss Hanford's counterclaims and third-party claims. (See Dkt. Minute Entry for Nov. 3, 2016.) The Court construes the correspondence as a motion to dismiss by the Watershed Defendants and an opposition by Hanford. ("Opposition," Dkt. No. 41.)

## A. THE WATERSHED DEFENDANTS' MOTION TO DISMISS [3]

In their Motion, the Watershed Defendants argue that Hanford's Answer and Third Party Complaint should be dismissed because Hanford· has failed to plead factual allegations sufficient to establish (1) the purchase or sale of securities, and (2) that the pledge of membership interests was an offering of securities requiring registration under Section 12. (See Dkt. No. 42.)

The Watershed Defendants argue that "the fatal flaw in Hanford's case is that the Rocky [Aspen] LLC membership interests are not 'securities' under the federal securities statutes." Id., at 2. Rather, the Watershed Defendants argue, "Hanford's allegations, taken as true, show only that [Hanford] made a secured business loan to Rocky [Aspen] which has not been repaid."

Id. Specifically, the Motion contends that the personal guaranty of McGrath; the Leasehold Mortgage and Security Agreement covering certain of Rocky Aspen's assets; and the pledge and security agreement covering Rocky Aspen's outstanding LLC interests were offered as collateral for the loan, and that none constitutes the purchase or sale of securities. (See id. at 2.)

In support of their argument, the Watershed Defendants cite to both the Exchange Act and the Securities Act, noting that LLC interests are not specifically enumerated in the definitions of a "security" under either statute. Id. (citing to 15 U.S.C. Section 77b(a)(1) and 15 U.S.C. Section 78c(a) (10)).) The Watershed Defendants further note that "Courts in this district and elsewhere have not hesitated to dismiss under Rule 12(b)(6) federal securities law claims premised on [LLC] membership interests being 'securities.'" Id. (citing Archer Well Company, Inc. v. GW Holdings I, LLC, No. 2013 WL 2314271 (S.D.N.Y. 2013); Endico v. Fonte, 485 F.Supp.2d 411 (S.D.N.Y. 2007); Nelson v. Stahl, 173 F.Supp.2d 153 (S.D.N.Y. 2001); Keith v. Black Diamond Advisors, Inc., 48 F.Supp.2d 326 (S.D.N.Y. 1999); see also Robinson v. Glynn, 349 F.3d 166 (4th Cir. 2003); Wen v. Willis, 117 F.Supp.3d 673 (E.D. Pa. 2015) ; Avenue Capital Management II, L.P. v. Schaden, 131 F.Supp.3d 1118 (D. Colo. 2015)).

■ The Watershed Defendants argue that this Court must follow suit and dismiss Hanford's Answer and Third Party Complaint, because Hanford has failed to "allege sufficient facts establishing that . . . the secured loan transaction, including the pledge of the LLC membership inter-

---

**3.** The Motion incorporates and renews the arguments made in the Watershed Defendants' prior letters dated September 14, 2016 (Dkt. No. 44) and September 22, 2016 (Dkt. No. 47) regarding the voluntary withdrawal of and dismissal of the Answer and Third Party Complaint.

ests, constituted an 'investment contract,'" as defined by SEC v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Motion, at 3. The three-prong Howey test for determining whether a particular scheme is an investment contract is whether the scheme involves "(1) an investment of money; (2) in a 'common enterprise'; and (3) with the expectation of profits to be derived from the efforts of a third-party." Id. (citing to Revak v. SEC Realty Corp., 18 F.3d 81, 87 (2d Cir. 1994)); see also Howey, 328 U.S. at 301, 66 S.Ct. 1100.

Finally, the Watershed Defendants argue that "Section 12(a) of the Securities Act applies only to public offerings of securities, not to private transactions such as the loan and pledge agreement between Hanford and Rocky," and that, as a result, Hanford's claim that the non-public pledge of membership interests were improperly unregistered must be dismissed. Motion, at 5.

### B. HANFORD'S OPPOSITION [4]

Hanford's Opposition argues that (1) Hanford's allegations are adequately pled; (2) whether the membership interests at issue are "securities" is a factual question that should not be decided on a motion to dismiss; (3) taken as true, Hanford's allegations establish that the pledged membership interests constitute securities; and (4) Hanford's allegations have established that the membership interests are subject to Section 12's registration requirements. (See Opposition, at 2–3.)

As an initial matter, Hanford argues that dispensing of its counterclaims and third party claims at the Motion to Dismiss stage would be premature because whether the interests in question are "securities" is a fact-intensive inquiry not to

be decided on a motion to dismiss. (See id.) (citing Automated Teller Mach. Advantage LC v. Moore, 2009 WL 2431513, at *5 (S.D.N.Y. Aug. 6, 2009)(holding whether "membership interests are ultimately determined to be investment contracts is 'more appropriately addressed in a summary judgment motion.'") (citations omitted)); Stechler v. Sidley, Austin Brown & Wood, L.L.P., 382 F.Supp.2d 580, 597 (S.D.N.Y. 2005) (determining "[w]hether the Digital Options are securities ultimately turns on these issues of fact" not appropriately resolved on a motion to dismiss).

Nonetheless, Hanford argues that its Answer and Third Party Complaint contains well-pleaded allegations sufficient to show that the pledged membership interests constitute "securities" entitled to the protection of the federal securities laws. (See Motion, at 2) (citing In re Tower Auto. Sec. Litig., 483 F.Supp.2d 327, 334 (S.D.N.Y. 2007)).

Specifically, Hanford argues that its well-pleaded Answer and Third Party Complaint contains allegations establishing that "[u]nder the [Watershed] Defendants' LLC agreement, the Aristone Defendants were to provide real estate development expertise, and raise capital for the venture and Watershed was to manage the operations finances and Rocky Aspen's relationship with a celebrity chef." Opposition, at 1. "Hanford's loan to Rocky Aspen was to provide the cash necessary to complete restaurant construction" and get the venture "off the ground." Id. Hanford argues these facts, among others contained in its pleadings, are sufficient to establish that (1) the Watershed Defendants, the Aristone Defendants, and Hanford entered into a joint venture in which each party had a role; (2) the Loan provided by Han-

---

4. The Opposition incorporates and renews the arguments made in Hanford's prior letter dated September 21, 2016 (Dkt. No. 45), opposing the voluntary withdrawal and dismissal of the Answer and Third Party Complaint.

ford to Rocky Aspen was collateralized by a Pledge and Security Agreement of the Watershed Defendants' "membership interests in Rocky Aspen and their related profit distributions" to Hanford; and (3) "if Rocky Aspen was not a success, [the Watershed Defendants] would not have the funds to pay Hanford and the collateral membership interests and distributions would be worth less an anticipated." Id.

Finally, Hanford argues that the Watershed Defendants erroneously assert that Section 12(a)(1) applies only to registered public offerings. Rather, Hanford maintains that Section "12(a)(1) applies broadly to any sale or offer to sell securities through a prospectus 'or otherwise.' " (Id.) (citing 15 U.S.C. Section 77e(c)) (emphasis in original). Thus, Hanford argues that the transaction in question falls under 12(a)(1)'s language covering the sale of securities by other means, and it is thus irrelevant whether the pledge of securities was public or private. (See Opposition, at 5.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b) (6)") mandates dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on

a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F.Supp.2d 566, 574 (S.D.N.Y. 2005) (quoting Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003)) (internal quotation marks omitted), aff'd sub nom., Tenney v. Credit Suisse First Bos. Corp., Nos. 05–3430–CV, 05–4759–CV, 05–4760–CV, 2006 WL 1423785 (2d Cir. May 19, 2006). A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

## III. DISCUSSION

The Watershed Defendants' Motion and Hanford's Opposition reveal that there are numerous material issues of fact regarding the heart of Hanford's claims—whether the pledged membership interests in Rocky Aspen constitute "securities"—that remain in dispute. However, if the Court accepts Hanford's allegations as true, as it must at this stage, Hanford has readily demonstrated that securities and, in particular, the sale of unregistered securities, are at issue. This showing is sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

### A. APPLICABLE LAW

#### 1. Securities

■ "[B]ecause 'membership interests [in LLCs] resist categorical classification ... case-by-case analysis into the economic realities of the underlying transaction' is required." Id. (citing United States v. Leonard, 529 F.3d 83, 89 (2d Cir. 2008)). The three-prong test for evaluating whether a particular transaction involves an investment contract for securities is "wheth-

er the scheme involves an [1] investment of money in a [2] common enterprise with [3] profits to come solely from the efforts of others." Howey, 328 U.S. 293, 301, 66 S.Ct. 1100.

■ In the Second Circuit, a plaintiff must also show either "horizontal commonality" or "vertical commonality" to meet the "common enterprise" prong of Howey. See Revak v. SEC Realty Corp., 18 F.3d 81, 87 (2d Cir. 1994). Specifically, horizontal commonality is demonstrated by "the tying of each individual investor's fortunes to the fortunes of other investors by the pooling of assets usually combined with the pro-rata distribution of profits." Id. Vertical commonality is established by showing a direct relationship between the fortunes of the investor and seller or promoter of the investment such that "their fortunes rise and fall together." In re Gas Reclamation, Inc. Securities Litig., 659 F.Supp. 493, 501–02 (S.D.N.Y. 1987).

## 2. Offer or Sale of Unregistered Securities

Section 12(a) (1) states that "[a]ny person who ... offers or sells a security in violation of section 5 [requiring registration of securities] shall be liable ... to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction ...." 15 U.S.C. Sections 77l(a) and 77l(a)(1)(Sections 12(a) and 12(a)(1) of the Securities Act of 1933). Section 5 states that "[i]t shall be unlawful for any person, directly or indirectly, to ... offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security." 15 U.S.C. Section 77e (Section 5 of the Securities Act of 1933) (emphasis added). Thus, Section 12(a) applies broadly to any sale or offer to sell any security through a public offering or otherwise, without a registration statement.

■ In addition to sales or offers, a pledge of unregistered securities is actionable under the federal securities laws. The Supreme Court has found that "[t]reating pledges as included among 'offers' and 'sales' comports with the Act's purpose and, specifically, with Section 17(a)'s purpose to protect against fraud and promote the free flow of information in the public dissemination of securities." Rubin v. United States, 449 U.S. 424, 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). In so holding, the Court reasoned that "[t]he economic considerations and realities present when a lender parts with value and accepts securities as collateral for a loan are similar in important respects to the risk an investor undertakes when purchasing securities. Both rely on the value of the securities themselves, and both must be able to depend on the transferor's representations, regardless of whether the transferor passes full title or only a conditional and defeasible interest to secure repayment of a loan." Id. (emphasis added).

■ "To state a cause of action under Section 5 [to which Section 12(a) refers], one must show (1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in connection with the offer or sale." SEC v. Cavanagh II, 445 F.3d 105, 111 n.13 (2d Cir. 2006) (internal quotation marks omitted).

■ Although some securities sales are exempt from the Section 5 registration requirement, "[o]nce a prima facie case has been made, the defendant bears the burden of proving the applicability of an exemption." Id. (citing SEC v. Ralston Purina Co., 346 U.S. 119, 126, 73 S.Ct. 981, 97 L.Ed. 1494 (1953)). Furthermore, "Section

5 imposes strict liability on offerors and sellers of unregistered securities regardless of any degree of fault, negligence, or intent on the seller's part." SEC v. Bronson, 14 F.Supp.3d 402, 408 (S.D.N.Y. 2014) (internal quotation marks omitted); see also SEC v. Tavella, 77 F.Supp.3d 353, 358 (S.D.N.Y. 2015).

## B. SECURITIES ARE AT ISSUE

■ Among other facts, Hanford's Answer and Third Party Complaint has pleaded that: (1) both the Watershed members and Aristone members owned 50 percent of Rocky Aspen's equity interest; (2) the Operating Agreement established Goglia and McGrath as co-managers on behalf of Rocky Aspen; (3) the Operating Agreement noted that RAM 204 would provide relevant expertise through its controlling parent, Watershed, and would organize and facilitate the involvement of David Burke, whereas AH DB's role would be to provide all initial capital to get the restaurant off the ground; and (4) RAM 204 and Rocky Aspen executed a Management Agreement requiring RAM 204 to act as manager of the restaurant at issue and providing that all of the duties of RAM 204 would be performed under the supervision of David Burke. (See Dkt. No. 23).

Taking Hanford's allegations as true, Hanford has pled facts establishing it is at least plausible that the transaction at issue is not merely a commercial loan, but rather one that is eligible for the protections of federal securities laws. The Second Circuit and Supreme Court have held that securities pledged to collateralize loan transactions are no longer mere loans and are subject to federal securities laws. See, e.g. Rubin, 449 U.S. at 431, 101 S.Ct. 698 (finding that including "pledges as included among 'offers' and 'sales' comports with the purpose of the Act"); U.S. v. Gentile, 530 F.2d 461, 467 (2d Cir. 1976) (finding that the recipient of pledged securities in a loan transaction "assumes a very real investment risk that the pledged securities will have continuing value, a risk that is identical in nature to the risk taken by investors which serves as the indisputable basis for statutory regulation of securities transactions").

Drawing all reasonable inferences in Hanford's favor, Hanford's pleadings meet the Howey test for establishing whether an "investment contract"—and thus securities—are involved. Specifically, Hanford's pleadings contain allegations that (1) Hanford invested its money; (2) in a common enterprise; and (3) was led to expect profits from the efforts of the promoter or a third-party. See Howey, 328 U.S. at 298–299, 66 S.Ct. 1100. Hanford has pled that it (1) made a multi-million dollar investment; (2) invested money in a common enterprise; (3) has met both the "horizontal commonality" and "vertical commonality" theories of common enterprise; and (4) was led to expect profits from the efforts of the Watershed and Aristone Defendants. (See Opposition, at 3).

Hanford's pleadings contain allegations that it invested and lost over $3.2 million of that investment in Rocky Aspen. With respect to the second prong, Hanford's pleadings contain allegations that Hanford's loan was pooled with the investment of the Watershed Defendants and others in order to ensure the success of the operation; that Hanford's loss of "over $3.2 million due to Rocky Aspen's failure at the hands of the [Watershed] Defendants" demonstrates a tying of fortunes; and that Hanford's investment was "inextricably linked to the performance of Rocky Aspen and its co-managers." Opposition, at 4. Finally, with respect to the third prong, Hanford's pleadings allege that, at the time of the pledge of securities, "Hanford was a passive, non-managing pledgee of Rocky Aspen's equity securities without

any right or ability to operate the company or even vote." Id.

Drawing all reasonable inferences in the Hanford's favor, the Court is persuaded that Hanford has pleaded allegations sufficient to raise a factual question as to whether securities are at issue in this case.

## C. UNREGISTERED SECURITIES ARE AT ISSUE

■ The Court is persuaded that Hanford has adequately pled violations of Section 12(a)(1) and derivative liability pursuant to Section 15. Regardless of whether the transaction in question was private or public, Section 12(a)(1) is available as a remedy where there is an offer to sell securities without a registration statement and the securities are not exempt from such registration requirements.

Upon reviewing the Answer and Third Party Complaint, the Court finds that Hanford's claims, accepted as true, plausibly show that The Watershed Defendants violated Section 12(a)(1). (See Opposition, at 2) (pointing to language in pleadings discussing Rocky Aspen's " 'Membership Certificate' which represents that 'THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933' ".) Accordingly, the burden of proof now rests on the Watershed Defendants to demonstrate that the securities at issue were exempt from registration. At the motion to dismiss stage, such an inquiry is premature.

The Watershed Defendants' Motion to Dismiss Hanford's Answer and Third Party Complaint is thus DENIED.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the Motion (Dkt. No. 42) of plaintiff Rocky Aspen Management Company 204 LLC ("RAM 204") and

third-party defendants Jeffrey Citron, Stephen Goglia, Mark Hamwi, and Watershed Ventures (collectively, the "Watershed Defendants) to dismiss defendant Hanford Holdings LLC's ("Hanford") Answer to First Amended Complaint for Declaratory Judgment, Affirmative Defenses, Counterclaims and Third–Party Complaint (Dkt. No. 23) is **DENIED.**